UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL COUNSEL BUREAU,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE, et al.,<br><br>    Defendants. | Civil Action No. 13-1591 (JDB) |

## MEMORANDUM OPINION

In this FOIA litigation, the question is simple: did the FBI conduct an adequate search? Unfortunately, the Court is unable to answer that inquiry with confidence. The affidavits provided by the FBI fail to adequately explain the agency's recordkeeping system. As a result, the Court cannot determine whether a search of a single database was sufficient—because it does not know what else might be searchable. Until the FBI clarifies the scope of its search, judgment for either party is premature.

## BACKGROUND

In May 2013, International Counsel Bureau filed another in a series of FOIA requests pertaining to certain Guantanamo detainees. This request, filed with the Federal Bureau of Investigation,[1] pertained to Fayiz Mohammed Ahmed Al Kandari and Fawzi Khaled Abdullah Fahad Al Odah. It demanded "[a]ny and all records created on or after September 30, 2011, relating to or reflecting any alleged breaches or violations [by Al Kandari or Al Odah] of any governing rules of discipline and/or behavior during their detention," as well as those records

---

[1] ICB filed FOIA requests with a number of other agencies, which are now co-defendants in this lawsuit. This opinion pertains only to the FBI request.

1

"relating to or reflecting any investigations into alleged abuse or mistreatment" of those detainees. Ex. A to Argall Decl. [ECF No. 20-1].

Three months later, the FBI responded. It averred that it was unable to identify responsive records as to Al Kandari. See Ex. C to Argall Decl. As to Al Odah, the FBI had not searched its records at all, as the records pertained to a third party, and ICB had not, in the agency's view, provided adequate justification for their release. See Ex. G to Argall Decl. ICB filed administrative appeals of both decisions, and, when those appeals remained unresolved, this suit seeking the requested records was initiated. See Compl. [ECF No. 1] at ¶ 75. The FBI and ICB have now filed cross-motions for summary judgment.

Over the course of briefing these motions, some initial disputes have dropped out of the case. For instance, the FBI clarified some of its positions, see Hardy Decl. [ECF No. 32-1] ¶ 7, and performed new searches under different spellings of the detainees' names, see id. ¶ 14. Most significantly, the FBI reconsidered its position on the Al Odah request, and performed a records search under his name—though to no avail. See id. ¶¶ 18–20. At this stage, then, the questions are identical as to both requests: the FBI searched its Central Records System, which "consist[s] of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes," Argall Decl. ¶ 16, and it came up empty-handed. ICB is unconvinced that a search of CRS alone is an adequate one.

## LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"To prevail on summary judgment when the adequacy of an agency's search is at issue, 'the defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents.'" Int'l Counsel Bureau v. U.S. Dep't of Defense, 657 F. Supp. 2d 33, 38 (D.D.C. 2009) (quoting Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007)). In making that determination, the Court "may be warranted in relying upon agency affidavits." Morley, 508 F.3d at 1116 (internal quotation marks and citation omitted). But "such reliance is only appropriate when the agency's supporting affidavits are relatively detailed[,] nonconclusory[,] and submitted in good faith." Id. (internal quotation marks, citation, and alteration omitted). As to the last point, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

## ANALYSIS

"There is no requirement that an agency search every record system." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). But "the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." Id. To that end, courts require "[a] reasonably detailed affidavit . . . averring that all files likely to contain responsive materials (if such records exist) were searched." Id. "Such an affidavit would presumably identify the searched files and describe at least generally the structure of the agency's file system which makes further search difficult." Church of Scientology of Calif. v. IRS, 792 F.2d 146, 151 (D.C. Cir. 1986). And "[c]onclusory statements that the agency has reviewed relevant files are insufficient to support summary judgment." Nation Magazine, Wash. Bureau v. United States, 71 F.3d 885, 890 (D.C. Cir. 1995) (citation omitted).

Here, the government has made some strides towards meeting that standard, but ultimately falls just short. The Hardy Declaration avers that "a search of the CRS could reasonably be expected to produce the information requested." Hardy Decl. ¶ 9; see also id. ¶ 19. "Moreover," it explains, "the FBI has no reason to believe that any records responsive to the request at issue in this case would have been stored in a system other than the CRS, nor has plaintiff provided any particular information that would tend to indicate responsive records even exist." Id. ¶ 9. That is all the declaration provides.

But it is not the plaintiff's burden to supply particularities. See Morley, 508 F.3d at 1114. And although the Court takes the agency's declarations in good faith, that principle does not absolve the FBI of its responsibility to provide a "reasonably detailed affidavit." Oglesby, 920 F.2d at 68. The FBI simply "did not describe its recordkeeping system in sufficient detail to permit [the Court] to identify what subject matter files, other than those in the [CRS], might hold responsive information." Nation Magazine, 71 F.3d at 891; cf. Int'l Counsel Bureau, 657 F. Supp. 2d at 41 (holding that the Department of Defense satisfied this requirement where its declaration "describes the structure of Joint Task Force-Guantanamo and the records maintained by its offices and subordinate components" and "permits plaintiffs to evaluate the Defense Department's assertion that only three components of the Joint Task Force maintain records responsive to plaintiffs' request").

The FBI knows how to produce adequate explanations when it wants to. Indeed, the Hardy Declaration adequately addresses ICB's concern that the FBI had not searched the National Name Check Program. As the declaration explains, that program merely "disseminates information from FBI files in response to name check requests received from [f]ederal agencies." Hardy Decl. ¶ 11. Thus, the program is not a database itself, but "conducts searches of the

CRS." Id. This simple explanation effectively ameliorates ICB's concerns as to the National Name Check Program. A similar description of the rest of the FBI's system would do much to streamline what remains of this case.

Unfortunately, the declaration is not quite as helpful as regards the other specific program to which ICB has pointed: the Data Integration and Visualization System. The declaration explains that the system is "a tool that facilitates the sharing of information from internal and external data sources, to include the CRS." Id. ¶ 12. As a result, the declaration avers, a search of this program "would merely duplicate search efforts of the CRS already performed." Id. But the declaration only states that the Data Integration and Visualization System includes CRS: it does not say that CRS is the exclusive source of information in that system. And it provides no information about any other systems that might inform the search, which might not be duplicative at all. These "[c]onclusory statements" are insufficient. Nation Magazine, 71 F.3d at 890.

Thus, the FBI has not yet demonstrated that it has conducted an adequate search, and does not merit summary judgment. But the statements in the Hardy Declaration are enough to defeat summary judgment for ICB for now: the Court is not yet convinced that the FBI has not completed a satisfactory search, it just cannot tell. Hence, the Court will give the FBI one more chance to explain why it has searched only CRS—and what databases, therefore, it has ignored. This may settle the case. But if it does not, the parties will be free to file renewed dispositive motions.

## CONCLUSION

For the reasons set forth above, the Court will deny without prejudice both parties' motions for summary judgment. A separate Order has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: April 29, 2015