SECRET//NOFORN

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INTERNATIONAL COUNSEL BUREAU, | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) Civil Action No. 13-01591 (JDB) |
|  | ) |
| UNITED STATES DEPARTMENT OF DEFENSE, et al., | ) |
|  | ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT FEDERAL BUREAU OF INVESTIGATION'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Date: July 6, 2015
Classified By: J37J85T94
Derived From: NSICG
Reason: 1.4 C
Declassify on: July 6, 2040

SECRET//NOFORN

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

SECRET//NOFORN

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

PROCEDURAL BACKGROUND.......................................................................... 2

STANDARD OF REVIEW .................................................................................... 3

ARGUMENT.......................................................................................................... 6

   I.   (U) The FBI Search of the CRS was Adequate ............................................... 6

   II.   (U) The Data Integration and Visualization System ...................................... 8

      A.   (U) An Overview of DIVS ...................................................................... 8

      B.   (U) A DIVS Search of the CRS Data Sets Would Be
          Duplicative of FBI's Prior Searches of the CRS ................................... 11

      C.   (U) The FBI Can Neither Confirm Nor Deny the Existence
          Or Non-Existence of Responsive Information Housed in the
          Non-CRS Data Sets Accessible by DIVS ............................................. 12

          1.   (U) FBI's *Glomar* Response is Appropriate Under
               FOIA Exemption (b)(1) ................................................................. 13

          2.   (U) FBI's *Glomar* Response is Appropriate Under
               FOIA Exemption (b)(3) ................................................................. 17

          3.   (U) FBI's *Glomar* Response is Appropriate Under
               FOIA Exemption (b)(7)(E) ........................................................... 19

      D.   (S/NF) ███████████████████████████████
          ████████████████████████████████
          ██████████████████ ..................................................... 22

      E.   (U) The Court Should Not Order a Search of the Data Sets
          Containing Information Collected and Controlled by Other
          Government Agencies ............................................................................ 23

SECRET//NOFORN

SECRET//NOFORN

F.   (U) Requiring the FBI to Use DIVS in Responding to FOIA Requests
     Would Create an Undue Burden on FBI and Would Impede the
     Effective Operation of the System ........................................................................ 26

CONCLUSION ............................................................................................................................ 28

ii

SECRET//NOFORN

~~SECRET//NOFORN~~

## TABLE OF AUTHORITIES

**Cases**

*Am. Civil Liberties Union v. U.S. Dep't of Justice,*
    265 F. Supp. 2d 20 (D.D.C. 2003) ............................................................................ 6

*Blanton v. FBI,*
    63 F. Supp. 2d 35 (D.D.C. 1999) .............................................................................. 21

*Burka v. U.S. Dep't of Health & Human Servs.,*
    87 F.3d 508(D.C. Cir. 1996) ..................................................................................... 24

*CIA v. Sims,*
    471 U.S. 159 (1985) ............................................................................................ 4, 18

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.,*
    527 F. Supp. 2d 76 (D.D.C. 2007) ........................................................................... 24

*Consumer Fed'n of America v. Dep't of Agriculture,*
    455 F.3d 283 (D.C. Cir. 2006) ................................................................................. 24

*Ctr. For Nat'l Sec. Studies v. U.S. Dep't of Justice,*
    331 F.3d 918 (D.C. Cir. 2003) ................................................................................... 5

*Defenders of Wildlife v. U.S. Border Patrol,*
    623 F. Supp. 2d 83 (D.D.C. 2009) ............................................................................. 4

*Dep't of Air Force v. Rose,*
    425 U.S. 352 (1976) ................................................................................................. 25

*Dep't of Justice v. Tax Analysis,*
    492 U.S. 136 (1989) ................................................................................................. 24

*Gardels v. CIA,*
    689 F.2d 1100 (D.C. Cir. 1982). .............................................................................. 12

*Goland v. CIA,*
    607 F.2d 339(D.C. Cir. 1978). ................................................................................. 17

*GTE Sylvania Inc. v. Consumers Union of U.S.,*
    445 U.S. 375 (1980) ................................................................................................. 23

*Halperin v. CIA,*
    629 F.2d 144(D.C. Cir. 1980) ............................................................................. 5, 18

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989). .................................................................................................. 4

~~SECRET//NOFORN~~

SECRET//NOFORN

*Judicial Watch, Inc. v. Fed. Hous. Fin. Agency,*
  646 F.3d 924 (D.C. Cir. 2011) .................................................................. 25

*Judicial Watch, Inc. v. U.S. Secret Serv.,*
  726 F.3d 208 (D.C. Cir. 2013) .................................................................. 24

*Keys v. U.S. Dep't of Justice,*
  830 F. 2d 337 (D.C. Cir. 1987) ................................................................. 20

*King v. Dep't of Justice,*
  830 F.2d 210 (D.C. Cir. 1987) .................................................................... 6

*Larson v. Dep't of State,*
  565 F.3d 857 (D.C. Cir. 2009) .................................................................... 6

*Marrera v. DOJ,*
  622 F. Supp. 51 (D.D.C. 1985) ................................................................. 16

*Military Audit Project v. Casey,*
  656 F.2d 724 (D.C. Cir. 1981) .................................................................... 4

*Miller v. Casey,*
  730 F.2d 773 (D.C. Cir. 1984) .................................................................. 17

*Minier v. CIA,*
  88 F.3d 796 (9th Cir.1996)........................................................................... 5

*Oglesby v. U.S. Dep't of the Army,*
  920 F.2d 57 (D.C. Cir. 1990), ..................................................................... 8

*People for the Am. Way Found. v. Nat'l Sec. Agency / Cent. Sec. Serv.,*
  462 F. Supp. 2d 21 (D.D.C. 2006) ............................................................ 15

*Phillippi v. CIA,*
  546 F.2d 1009 (D.C. Cir. 1976), ............................................................... 12

*Pratt v. Webster,*
  673 F.2d 408 (D.C. Cir. 1982) .................................................................. 20

*Riquelme v. CIA,*
  453 F. Supp. 2d 103 (D.D.C. 2006) .......................................................... 16

*SafeCard Servs., Inc. v. SEC,*
  926 F.2d 119 (D.C. Cir. 1991) .................................................................... 4

*Salisbury v. United States,*
  690 F.2d 966 (D.C. Cir. 1982) .................................................................... 5

iv

SECRET//NOFORN

SECRET//NOFORN

*Shaw v. FBI*,
    749 F.2d 58 (D.C. Cir. 1984)). ............................................................................................... 20

*Smith v. ATF*,
    977 F. Supp. 496 (D.D.C. 1997). ............................................................................................ 21

*Snepp v. United States*,
    444 U.S. 507 (1980). ................................................................................................................ 18

*Subh v. CIA*,
    760 F. Supp. 2d 66 (D.D.C. 2011) ........................................................................................... 17

*Truthout v. Dep't of Justice*,
    968 F. Supp. 2d 32 (D.D.C. 2013) .............................................................................................. 7

*Washington Post v. Dep't of Homeland Sec.*,
    459 F. Supp. 2d 61 (D.D.C. 2006) ........................................................................................... 24

*Weisberg v. U.S. Dep't of Justice*,
    705 F.2d 1344 (D.C. Cir. 1983) .................................................................................................. 4

*Wheeler v. CIA*,
    271 F. Supp. 2d 132 (D.D.C. 2003) ......................................................................................... 19

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ................................................................................................. 16

**Statutes**

5 U.S.C. § 552(a) ............................................................................................................................ 24

5 U.S.C. § 552(b) .............................................................................................................................. 5

5 U.S.C. § 552(b)(1) ................................................................................................................. 12, 13

5 U.S.C. § 552(b)(3) ................................................................................................................. 13, 17

5 U.S.C. § 552(b)(3)(A) ................................................................................................................. 17

5 U.S.C. § 552(b)(3)(B). ................................................................................................................ 17

5 U.S.C. § 552(b)(7) ....................................................................................................................... 20

5 U.S.C. § 552(b)(7)(E) ............................................................................................................ 12, 21

28 U.S.C. § 533 ............................................................................................................................... 20

SECRET//NOFORN

SECRET//NOFORN

50 U.S.C. § 1806(a). ............................................................................................... 22

50 U.S.C. § 3024(i)(1). ..................................................................................... 17, 18

50 U.S.C. § 403-1(i)(1). ......................................................................................... 12

The USA PATRIOT Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001).......................... 9, 27

The Intelligence Reform and Terrorism Prievention Act of 2004 ("IRPTA"),
   Pub L. 108-458, 118 Stat 3638 (2004) ...................................................................... 9

**Regulations**

75 Fed. Reg. 707 ....................................................................................... 12, 13, 14

**Federal Rules**

Fed. R. Civ. P. 56(a) ............................................................................................... 3

**Other Authorities**

Executive Order 12333 ........................................................................................... 20

H.R. Rep. No. 1497, 89th Cong., 2 Sess. 6 (1966), reprinted in 1966 U.S.C.C.A.N. 2418 ........... 5

SECRET//NOFORN

SECRET//NOFORN

## INTRODUCTION

(U) The Federal Bureau of Investigation ("FBI") has conducted a reasonable search in response to a request for information that plaintiff submitted pursuant to the Freedom of Information Act ("FOIA"), and FBI is therefore entitled to summary judgment. As made clear in the attached declaration of David M. Hardy, and in the previously-submitted declarations of both David M. Hardy and Dennis J. Argall, FBI has completed a search of its Central Records System ("CRS"). FBI searched the CRS because, based on the type of information sought in the request, the CRS was the most likely place that responsive records would be found. FBI's search was reasonably calculated to recover responsive information, and that search returned no responsive records.

(U) Despite FBI's adequate search of the CRS, plaintiff objected that the FBI did not provide sufficient information to show that it was not required to search its Data Integration and Visualization System ("DIVS") in response to the request. The Court agreed with that assessment and provided the FBI with an opportunity to explain why it did not perform a search using DIVS. As explained below, DIVS is a system that allows the FBI to access multiple sets of information, including information already contained in the CRS, information controlled by other government agencies, and other information explained in more detail in the FBI's *ex parte in camera* submission. Thus, because a DIVS search would, in part, reveal information that is already contained in the CRS, searching that particular set of information through DIVS would duplicate the search that FBI has already conducted. With respect to the remainder of the information that is accessible by DIVS, the FBI cannot confirm or deny the existence or non-existence of any responsive records without compromising the concerns that animate FOIA exemptions from disclosure, specifically the exemptions set forth at 5 U.S.C. §§ 552(b)(1),

SECRET//NOFORN

SECRET//NOFORN

(b)(3), and (b)(7)(E). Several additional factors, some of which are explained in the *ex parte in camera* submission, counsel against subjecting certain of the non-CRS data sets accessible by DIVS to the requirements of FOIA. Moreover, beyond the legal obstacles that prevent the FBI from responding to FOIA request through a DIVS search, practical considerations also counsel against the use of DIVS for FOIA purposes. The human and physical resource burden that would be created by subjecting DIVS to FOIA is substantial, and requiring a DIVS in response to the thousands of FOIA requests received by FBI each year would effectively render the system inoperable and incapable of fulfilling its intended purpose.

## PROCEDURAL BACKGROUND

(U) This case arises from multiple FOIA requests that plaintiff submitted to multiple federal agencies in May 2013. These requests are related in part to FOIA requests plaintiff submitted in 2007, 2009, and 2011 to FBI and several other agencies. FBI received one of the 2013 requests—the request at issue here relates to certain disciplinary records pertaining to Guantanamo detainee Fayiz Mohammed Ahmed Al Kandari and former Guantanamo detainee Fawzi Khaled Abdullah Fahad Al Odah, and any investigations into potential mistreatment of either of those individuals ("Disciplinary Action" request). The relevant facts regarding the FBI's processing of the 2013 Disciplinary Action request are set forth in the FBI's memorandum of points and authorities in support of its first motion for summary judgment, *see* Def.'s Mem. P & A in Supp. of Mot. for Summ. J. ("Mot. for Summ. J.") (Dkt. No. 20-1), at 2-5, and its reply memorandum, *see* Def.'s Reply (Dkt. No. 30), at 10-12, and are hereby incorporated by reference. In short, the FBI conducted automated searches of both the main and reference entries

2

SECRET//NOFORN

SECRET//NOFORN

of the Central Records System ("CRS") for records responsive to both the request.[1]  No

responsive documents were located.

(U) The sole question presented in the parties' cross-motions for summary judgment was

whether the FBI conducted an adequate search for responsive records.  Upon reviewing the

parties' submissions, the Court concluded that the FBI had not "describe[d] its recordkeeping

system in sufficient detail to permit [the Court] to identify what subject matter files, other than

those in the [CRS], might hold responsive information."  Mem. Op. at 4 (Dkt. No. 36).  In

particular, the Court noted that the FBI failed to adequately rebut plaintiff's contention that the

FBI should have conducted a search of the Data Integration and Visualization System ("DIVS").

*Id.* at 5.  The Court also noted that the FBI did not address whether "any other [records] systems

[] might inform the search[.]" *Id.* at 5.  Accordingly, the Court denied the parties' cross-motions

for summary judgment and ordered the FBI to provide further explanations regarding the scope

of its search, and submit a renewed motion for summary judgment.  *See* Order (Dkt. No. 35).

## STANDARD OF REVIEW

(U)  Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "FOIA cases typically and appropriately are decided on motions for summary

---

[1] (U) Pursuant to exemptions (b)(6) and (b)(7), the FBI initially declined to conduct a search for records pertaining to the Al Odah portion of the request because plaintiff failed to provide a privacy waiver, proof of death, or sufficient evidence that the public interest in disclosure of the records being sought outweighs the privacy interest that is attached to any responsive records that might exist.  *See* Def.'s Reply at 10.  The FBI, however, reconsidered its position upon review of plaintiff's Cross-Motion for Summary Judgment in which plaintiff presented several arguments addressing the public's interest in the requested records, some of which were raised for the first time and all of which were more robust than the initial justifications offered by plaintiff on appeal to the Office of Information Policy.  *Id.*

3

SECRET//NOFORN

SECRET//NOFORN

judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).

In a FOIA action, "the agency bears the burden of showing that there is no genuine issue of

material fact, even when the underlying facts are viewed in the light most favorable to the

requestor." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).   The Court

may award summary judgment in a FOIA action solely on the basis of information provided by

the agency through a declaration when the declaration describes "the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate[s] that the

information withheld logically falls within the claimed exemption, and [is] not controverted by

either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit

Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).   Agency declarations must be "relatively

detailed and non-conslusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir.

1991).   Such declarations are accorded "a presumption of good faith, which cannot be rebutted

by purely speculative claims about the existence and discoverability of other documents." *Id.*

(internal citation and quotation omitted).

   (U)   The FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure

unless information is exempted under clearly delineated statutory language." *John Doe Agency

v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation and internal quotation marks omitted).

"Congress recognized, however, that public disclosure is not always in the public interest[.]"

*CIA v. Sims*, 471 U.S. 159, 166-67 (1985).   Thus, in passing FOIA, "Congress sought to 'reach a

workable balance between the right of the public to know and the need of the Government to

keep information in confidence to the extent necessary without permitting indiscriminate

SECRET//NOFORN

secrecy.'" *John Doe*, 493 U.S. at 152 (quoting H.R. Rep. No. 1497, 89th Cong., 2 Sess. 6 (1966), reprinted in 1966 U.S.C.C.A.N. 2418, 2423).

(U)  To that end, FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exceptions. *See* 5 U.S.C. § 552(b). Despite the "liberal congressional purpose" of FOIA, the statutory exemptions must be given "meaningful reach and application." *John Doe*, 493 U.S. at 152. "Requiring an agency to disclose exempt information is not authorized[.]" *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir.1996) (citation and internal quotations omitted). In evaluating the applicability of FOIA exemptions for purposes of deciding FBI's Renewed Motion for Summary Judgment, it is important to note that the information sought by plaintiff "implicat[es] national security, a uniquely executive purview." *Ctr. For Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926-27 (D.C. Cir. 2003). Courts have specifically recognized the "propriety of deference to the executive in the context of FOIA claims which implicate national security." *Id.* at 927; *see also Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982) ("Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [*sic*] might occur as a result of public disclosure" and consequently, "courts are required to accord substantial weight to an agency's affidavit concerning the details of the classified status of a disputed record.") (internal quotations and citations omitted). Indeed, courts have routinely and repeatedly emphasized that "the judiciary is in an extremely poor position to second-guess the executive's judgment in [the] area of national security." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 928; *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) ("Judges . . . lack the expertise necessary to second-guess [] agency opinions in the typical national security FOIA case."). Thus, in the FOIA context, courts have

SECRET//NOFORN

"consistently deferred to executive affidavits predicting harm to the national security, and have

found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at

927; *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009.) ("Today we reaffirm our

deferential posture in FOIA cases regarding the 'uniquely executive purview' of national

security."). Accordingly, "in the national security context, the reviewing court must give

'substantial weight'" to agency declarations. *Am. Civil Liberties Union v. U.S. Dep't of Justice*,

265 F. Supp. 2d 20, 27 (D.D.C. 2003) (quoting *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C.

Cir. 1987)).

## ARGUMENT

### I.   (U) The FBI Search of the CRS was Adequate.

(U)   The previously-submitted declarations of Dennis J. Argall ("Argall Decl."), *see* Dkt.

No. 20-1, and David M. Hardy ("First Hardy Decl."), *see* Dkt. No. 30-1, incorporated herein by

reference, and the additional declaration of David M. Hardy ("Second Hardy Declaration")

submitted herewith, explain in detail that the nature of the FBI's Central Records System

("CRS") and the search of that system that FBI conducted in response to the FOIA request at

issue in this case. As explained in those declarations, the CRS is the centralized repository for

records that the FBI collects during the course of its mission. Argall Decl. ¶ 16 ("[CRS], which

is utilized to conduct searches in response to FOIA and Privacy Act requests, enables the FBI to

maintain all information which it has acquired during the course of fulfilling its mandated law

enforcement responsibilities."); First Hardy Decl. ¶ 9 (explaining that "the CRS is

comprehensive in nature" and includes "files compiled to assist the FBI in carrying out its law

enforcement mission; a mission that includes both criminal and national security priorities.").

SECRET//NOFORN

SECRET//NOFORN

The CRS, by design, is intended to enable FBI officials to locate and retrieve relevant law

enforcement records—including records maintained at all FBI field offices, legal attaches, and at

FBI headquarters.   Argall Decl. ¶ 21; First Hardy Decl. ¶¶ 8-9.   And as noted in the FBI's

opening brief, courts reviewing the adequacy of a FOIA search performed by the FBI have

repeatedly acknowledged that the CRS is comprehensive in nature and have upheld searches of

the CRS as reasonable in response to FBI records requests.   *See e.g., Truthout v. Dep't of Justice*,

968 F. Supp. 2d 32, 37 (D.D.C. 2013) (holding that FBI's search of the CRS for records

responsive to a FOIA request was adequate because the CRS is a "comprehensive records system

likely to contain responsive records.").

(U)  In this case, the FBI conducted searches of the CRS for records responsive to

plaintiff's request not only because of the comprehensive nature of the records system, but also

because, as confirmed in the Second Hardy Declaration, FBI information related to Guantanamo

detainees or investigations involving detainee treatment at Guantanamo would likely be housed

in the CRS.   Second Hardy Decl. ¶ 35.   Indeed, as plaintiff points out in its first cross-motion for

summary judgment, a search of the CRS in response to plaintiff's 2009 and 2011 FOIA requests,

which are substantially similar to the instant request, located responsive records.   *See* Pl.'s Cross-

Mot. for Summ. J. at 12-13 (Dkt. No. 24); First Hardy Decl. ¶ 10.   The retrieval of responsive

records from the CRS during those earlier searches is an indication that, were records responsive

to the 2013 request in existence, they too would likely be housed in the CRS.

(U)  Based on the comprehensive nature of the CRS, the fact that FBI information

related to Guantanamo detainees or investigations involving detainee treatment at Guantanamo

would likely be housed in the CRS, and that prior searches of the CRS conducted in response to

7

SECRET//NOFORN

SECRET//NOFORN

plaintiff's 2009 and 2011 requests for similar information returned responsive material, it was reasonable for the FBI to conclude that if records responsive to the 2013 request exist, they would be indexed in the CRS. First Hardy Decl. ¶ 9.

(U) The FBI conducted that search using search terms that included the names "Fayiz Ahmed Al Kandari" and "Khaled Abdullah Fahad Al Odah," as well as numerous variants of those names, including all variants provided by the requestors. *See* Argall Decl. ¶ 22; First Hardy Decl. ¶¶ 15, 19-20. As explained in FBI's earlier briefing in this matter, FBI's search of the CRS returned no responsive records. *See* FBI Mot. for Summ. J. at 7 (Dkt. No. 20); FBI Reply in Supp. of Summ. J. at 8, 11-12 (Dkt. No. 30). Accordingly, because the FOIA only requires an agency to conduct a search that is "reasonably calculated to uncover all relevant documents," *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation omitted), and because "[t]here is no requirement that an agency search every record system," *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), the FBI advised plaintiff that no responsive records exist, *see* First Hardy Decl. at ¶¶ 9-10.

(U) Nevertheless, as the Court made clear in its Memorandum and Order of April 29, 2015, the FBI did not adequately explain its failure to utilize DIVS in responding to this request. *See* Mem. Op. 5 (Dkt. No. 36). To address the Court's concern, FBI provides herein and in the accompanying declarations additional information related to the operation of DIVS.

## II.  (U)  The Data Integration and Visualization System

### A.  (U) An Overview of DIVS

(U)  The FBI's traditional law enforcement priorities have expanded since the September 11, 2001, terrorist attacks. Second Hardy Decl. ¶ 11. Today, the FBI serves not only as the

SECRET//NOFORN

SECRET//NOFORN

nation's premier federal law enforcement agency, but also as its primary domestic intelligence agency. *Id.* Indeed, the FBI's current mission "is to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, states, municipal, and international agencies and partners." *Id.* The FBI's top priorities include protecting the United States from terrorist attacks, foreign intelligence operations and espionage. *Id.*

(U) In the wake of September 11th, the federal government realized that the prevention of future terrorist attacks hinges on the ability to share vital intelligence information across agency lines. *Id.* ¶ 12. The USA PATRIOT Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001), and the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRPTA"), Pub. L. 108-458, 118 Stat. 3638 (2004), removed the institutional barriers that had previously prevented information sharing and coordination among federal, state, and local government agencies. *Id.* As a result, the FBI has taken steps to advance its technological capabilities to search and analyze intelligence and law enforcement information originating from a wide variety of sources. *Id.* ¶ 13. One such technological advance is DIVS. *Id.* ¶ 14.

(S//NF) ███████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████
██████████████████████████████████████████

9

SECRET//NOFORN

SECRET//NOFORN

(S//NF)

10

SECRET//NOFORN

SECRET//NOFORN

(S//NF) ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

(S//NF) ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

███████████

## B.  (U) A DIVS Search of the CRS Data Sets Would be Duplicative of FBI's Prior Searches of the CRS.

(U)  Twenty-one of the data sets that DIVS is capable of accessing contain information

that is indexed in the CRS.  Second Hardy Decl. ¶ 18.  As explained above and in FBI's earlier

summary judgment briefing in this matter, the FBI has already conducted a search of the CRS.

11

SECRET//NOFORN

SECRET//NOFORN

For the reasons discussed, that search was reasonably tailored to produce any responsive

information that may have been housed in the CRS. *See* Argall Decl. ¶ 22; First Hardy Decl. ¶¶

15, 19-20. The search resulted in no responsive records. Accordingly, FBI has already

conducted an adequate search of information contained in the CRS, and FOIA does not require

FBI to duplicate that search using a separate search tool.

> **C. (U) The FBI Can Neither Confirm Nor Deny the Existence or Non-Existence of Responsive Information Housed in the Non-CRS Data Sets Accessible by DIVS.**

(U) The FBI can neither confirm nor deny the existence or non-existence of records

contained in the non-CRS data sets accessible by DIVS without disclosure of information

protected by FOIA exemptions (b)(1), (b)(3), and (b)(7)(E).[2] Section 3.6(a) of Executive Order

("E.O.") 13526 expressly provides for this style of response to a FOIA request. *See* 75 Fed. Reg.

707 (Dec. 29, 2009). The invocation of a *Glomar* response is appropriate when "to confirm or

deny the existence of records . . . would cause harm cognizable under a FOIA exception."

*Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).

(U) Confirmation or denial of the existence of information contained in the non-CRS

DIVS-accessible data sets concerning the specific foreign nationals named in plaintiff's FOIA

request would cause harm cognizable under FOIA exemptions (b)(1) and (b)(7)(E). *See* 5 U.S.C.

§§ 552(b)(1), 552(b)(7)(E). Additionally, the National Security Act of 1947, 50 U.S.C. § 403-1,

exempts the FBI from using DIVS to search and analyze that information. Thus, FOIA

---

[2] (U) The refusal to confirm or deny the existence of records responsive to a FOIA request is commonly referred to as a "*Glomar*" response, under terminology derived from the case *Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976), in which the CIA successfully defended its refusal to confirm or deny the existence of records regarding a ship, the "Hughes Glomar Explorer."

SECRET//NOFORN

SECRET//NOFORN

exemption (b)(3) also supports FBI's *Glomar* response. *See* Second Hardy Decl. ¶¶ 31-33;

5 U.S.C. § 552(b)(3).  FBI's *Glomar* response fulfills its FOIA obligations with respect to the

information contained in the non-CRS DIVS-accessible data sets; accordingly, FBI is entitled to

summary judgment.

       1.  (U) FBI's *Glomar* Response is Appropriate Under FOIA Exemption (b)(1).

(U) FOIA exemption (b)(1) protects from disclosure records that are "(A) specifically

authorized under criteria established by an Executive order to be kept secret in the interest of

national defense or foreign policy and (B) are in fact properly classified pursuant to such

Executive order."  5 U.S.C. § 552(b)(1).  Section 1.4 of E.O. 13526 specifies categories of

information that are eligible for classification, including information concerning "intelligence

activities" and "intelligence sources or methods," and information concerning "foreign relations

or foreign activities of the United States, including confidential sources."  *See* 75 Fed. Reg. 707.

Section 1.1 of the Order provides that information falling within one of these categories may be

classified when the following conditions are met: (1) an original classification authority ("OCA")

is classifying the information; (2) the information is owned by, produced by or for, or is under

the control of the United States Government; (3) the information falls within one or more of the

categories of information listed in section 1.4 of E.O. 13526; and (4) the OCA determines the

unauthorized disclosure of the information reasonably could be expected to result in damage to

the national security, which includes defense against transnational terrorism, and the original

classification authority is able to identify or describe the damage.  *Id.*

(U) Here, plaintiff seeks information concerning specific foreign nationals, one of whom

is currently detained at Guantanamo, and the other had previously been detained at Guantanamo.

SECRET//NOFORN

SECRET//NOFORN

The Section Chief of the FBI's Record/Information Dissemination Section ("RIDS"), an OCA

pursuant to section 1.3 of E.O. 13526, has determined that acknowledgement of the existence or

non-existence of responsive information contained in the non-CRS DIVS-accessible data sets

meets the criteria for classification provided in the Executive Order: "the data sets are owned by

and under the control of the United States Government; the use of DIVS and its resulting product

would reveal information referenced in § 1.4(c), specifically, intelligence activities as well as

intelligence sources and methods; and such unauthorized disclosure reasonably could be

expected to cause serious or exceptionally grave damage to the national security." Second Hardy

Decl. ¶ 27.

 (U) More specifically, the OCA has identified and described in detail the reasons

underlying his determination that confirmation of the existence or non-existence of responsive

records contained in the non-CRS DIVS-accessible data sets would reveal classified information.

Second Hardy Decl. ¶¶ 28-29. Section 1.4(c) of E.O. 13526 provides as subject to classification

information concerning intelligence activities (including covert action), intelligence sources or

methods, or cryptology. *See* 75 Fed. Reg. 707, 709. An intelligence activity or method includes

any intelligence action or technique utilized by the FBI against a targeted individual or

organization who has been determined to be of national security interest. Second Hardy Decl.

¶ 28. An intelligence method can include any procedure (human or non-human) utilized to

obtain information concerning such individual or organization. *Id.* An intelligence activity or

method has two characteristics: (1) the intelligence activity or method—and information

generated by it—is needed by USIC to carry out its foreign intelligence and counterintelligence

missions; and (2) confidentiality must be maintained with respect to the activity or method if the

14

SECRET//NOFORN

viability, productivity and usefulness of this information is to be preserved. *Id.* The full

capabilities of DIVS, as described in more detail above, render the system an intelligence

method. *Id.* at ¶ 30. Thus, release of information contained in the non-CRS data sets accessible

by DIVS would reveal information concerning the capabilities and reach of an intelligence

method used by the FBI in national security investigations. *Id; see also People for the Am. Way

Found. v. Nat'l Sec. Agency / Cent. Sec. Serv.*, 462 F. Supp. 2d 21, 31 (D.D.C. 2006) (holding

that a *Glomar* response issued by the National Security Agency ("NSA") in response to a request

for information regarding the surveillance of an individual was appropriate because confirmation

or denial of responsive information would reveal information about NSA's capabilities, sources,

and methods).

(S//NF) ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

SECRET//NOFORN

SECRET//NOFORN

(S//NF)

16

SECRET//NOFORN

2. (U) FBI's *Glomar* Response is Appropriate Under FOIA Exemption (b)(3).

(U) FOIA exemption (b)(3) protects from disclosure information that is "specifically exempted from disclosure by statute" under certain conditions. 5 U.S.C. § 552(b)(3). To qualify as a statute that permits the withholding of information pursuant to exemption (b)(3), a statute must "(i) require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld."[3] 5 U.S.C. § 552(b)(3)(A). "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978).

(U) Section 102A(i)(1) of the National Security Act of 1947, as amended, provides that the "Director of National Intelligence ("DNI") shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). This statute satisfies the criteria for withholding of information pursuant to FOIA exemption (b)(3). *See Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984) ("Section 403 [of the National Security Act of 1947] is an Exemption 3 statute."); *Subh v. CIA*, 760 F. Supp. 2d 66, 70 (D.D.C. 2011) ("these provisions of the [NSA] . . . are precisely the type[] of statute[] comprehended by exemption 3") (internal quotations omitted).

---

[3] (U) Additionally, statutes "enacted after the date of the enactment of the OPEN FOIA Act of 2009," must specifically cite the appropriate section of FOIA to qualify as withholding statutes pursuant to exemption (b)(3). 5 U.S.C. § 552(b)(3)(B).

17

SECRET//NOFORN

SECRET//NOFORN

(U) The Supreme Court has made clear that it is the responsibility of the appropriate authority in the USIC,[4] "not . . . the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process." *CIA v. Sims*, 471 U.S. 159, 180 (1985). To fulfill its obligation of protecting intelligence sources and methods, the Director of National Intelligence ("DNI") is authorized to establish and implement guidelines for the USIC for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence. *See* 50 U.S.C. § 3024(i)(1). The FBI is one of 17 member agencies comprising the USIC, and as such, FBI must protect intelligence sources and methods. Thus, when FBI provides a *Glomar* response pursuant to exemption (b)(3), the only question for the Court is whether the agency has demonstrated that answering the request "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." *See Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980).

(S//NF) ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████

---

[4] (U) The Court's opinion referred to the "wide-ranging authority" given to the Director of Central Intelligence pursuant to the Director's previously existing statutory authority to protect intelligence sources and methods. *CIA v. Sims*, 471 U.S. 159, 177 (1985) (quoting *Snepp v. United States*, 444 U.S. 507, 509, n.3 (1980)). The Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, transferred this authority to the Director of National Intelligence.

SECRET//NOFORN

SECRET//NOFORN

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

3.  (U) FBI's *Glomar* Response is Appropriate Under FOIA Exemption (b)(7)(E).

(U)  Exemption (b)(7)(E) may be invoked over certain information where an agency can

show (1) that the information was "compiled for law enforcement purposes," and (2) that release

of the information "would disclose techniques and procedures for law enforcement investigations

or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions

if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C.

§ 552(b)(7) (E).  As described in detail in the Second Hardy Declaration, the information at issue

here readily meets these requirements; accordingly, FBI's *Glomar* response is appropriate.

19

SECRET//NOFORN

SECRET//NOFORN

(U)  To withhold information under exemption (b)(7)(E), an agency must first demonstrate that the records at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). A criminal law enforcement agency's invocation of a law enforcement purpose determination is entitled to greater deference than similar claims by other agencies. *See Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982). To meet this requirement, an agency with a clear law enforcement mandate, such as the FBI, needs to establish only that "the nexus between the agency's activity . . . and its law enforcement duties [is] based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys v. U.S. Dep't of Justice*, 830 F. 2d 337, 340 (D.C. Cir. 1987) (internal quotations omitted). "An objective finding of such a nexus is refutable only by 'persuasive evidence that in fact another, nonqualifying reason prompted the investigation.'" *Id.* (citing *Shaw v. FBI*, 749 F.2d 58, 63 (D.C. Cir. 1984)).

(U) The FBI has established that nexus here.  The FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal laws, including criminal violations, not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States. *See generally* 28 U.S.C. §§ 533, 534; Executive Order 12333; 28 CFR § 0.85. DIVS was created to facilitate the FBI's national security and law enforcement missions by establishing a centralized point of access to allow search and analysis of potentially pertinent information that facilitates the FBI's ability to develop investigative leads, operational intelligence products and strategic intelligence assessments on new or evolving national security and criminal threats. Second Hardy Decl. at ¶ 35. DIVS's capabilities qualify it as an investigative technique and

20

SECRET//NOFORN

SECRET//NOFORN

procedure used by the FBI in carrying out its criminal and national security investigations. Thus, the creation and use of DIVS, as well as the information capable of being searched by DIVS meets the threshold requirement of Exemption (b)(7)(E).

(U) The remaining inquiry is whether disclosure of the existence or non-existence of responsive information contained in non-CRS DIVS-accessible data sets could "disclose techniques and procedures for law enforcement investigations . . . or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The protection afforded by exemption (b)(7)(E) is categorical for information related to law enforcement techniques. *See Smith v. ATF*, 977 F. Supp. 496, 501 (D.D.C. 1997). Thus, even where the existence of a law enforcement technique or method has been disclosed, but the public is not generally aware of the manner and circumstances in which the technique or method is employed, exemption (b)(7)(E) still applies. *See Blanton v. FBI*, 63 F. Supp. 2d 35, 49-50 (D.D.C. 1999) (holding that even though FBI had generally acknowledged its use of polygraphs, it could still withhold specific information related to their use pursuant to exemption (b)(7)(E)).

(U) Here, DIVS is employed as a sensitive investigative technique used by the FBI, and the non-CRS data sets accessible by DIVS have not been made public. Second Hardy Decl. ¶¶ 36-38. Therefore, although FBI has acknowledged the existence of DIVS, providing any additional information about its use or capabilities would expose details of a specific law enforcement technique. *Id.*; *Blanton*, 63 F. Supp. 2d at 49-50. Moreover, the mere revelation that a DIVS search was employed and did or did not uncover records about any given individual could reveal to a FOIA requester whether they may or may not be of investigative interest to the

21

SECRET//NOFORN

FBI, and could result in efforts to circumvent the law in a variety of ways. *Id.* at ¶¶ 40-41.  First, the fact that the DIVS investigative tool located non-CRS information about an individual would be a key piece of information that could readily be used by criminal elements or terrorists to verify whether they or members of their group are of interest to the FBI, which could heighten that individual's suspicion, inducing him or her to more closely scrutinize activities and associations.  *Id.*  Second, based upon this confirmation, associates could terminate interactions with these individuals making it impossible for the FBI to gain further intelligence information. *Id.*  Third, certain confidential sources that may have provided important information could be detected, thus compromising the FBI's ability to collect valuable intelligence information from those sources.  *Id.*  Fourth, for the FBI to confirm that information does not exist would be equivalent to admitting to an individual that his or her efforts to conceal his or her activities and avoid detection have been successful.  *Id.*  For all these reasons, public disclosure of the information at issue here could reasonably be expected to risk circumvention of the law.

D.   (S//NF) █████████████████████

(S//NF) █████████████████

████████████████████████

████████████████████████

███████████████████████

██████████████████████

████████████████████

22

SECRET//NOFORN



**E. (U) The Court Should Not Order a Search of the Data Sets Containing Information Collected and Controlled by Other Government Agencies.**

(S//NF)

23

SECRET//NOFORN

SECRET//NOFORN

(U) FOIA does not require the FBI to search for records outside of the agency's control. 5 U.S.C. § 552(a).  Documents are only "agency records" subject to FOIA if they (1) are created or obtained by an agency, and (2) in the agency's control. *See U.S. Dep't of Justice v. Tax Analysis*, 492 U.S. 136, 144-46 (1989). Although the FBI can access, search, and analyze the information contained in these data sets, it does not control that information for purposes of FOIA and, thus, is not required to search that information in response to a FOIA request.

(U) The D.C. Circuit generally balances four factors in determining whether an agency exercises sufficient control over requested documents to render them agency records:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (citation omitted); *see also Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 218 (D.C. Cir. 2013). In conducting the balancing test, courts have generally concluded that the third factor—the extent to which agency has actually read or relied upon the document (*i.e.* used the document)— is "the decisive factor." *Consumer Fed'n of Am. v. Dep't of Agriculture*, 455 F.3d 283, 288 (D.C. Cir. 2006). *See also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 76, 97 (D.D.C. 2007) ("[A]n agency's actual use of a document is often more probative than the agency's subjective intent."); *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 72 (D.D.C. 2006) (agency's use of records for an official agency function is determinative).

SECRET//NOFORN

(S//NF)

(S//NF)

25

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

(U)  As the application of all four of the D.C. Circuit's factors demonstrates that the FBI does not control the information contained in the OGA data sets accessible through DIVS, the information does not constitute "agency records" subject to FOIA.  The FOIA, therefore, imposes no obligation on the FBI to search the OGA data sets for information responsive to plaintiff's request.

### F.  (U) Requiring the FBI to Use DIVS in Responding to FOIA Requests Would Create an Undue Burden on the FBI and Would Impede the Effective Operation of the System.

(U) Moreover, requiring the FBI to use DIVS to perform a search in response to a FOIA request would create an undue burden on the FBI and would impede the ability of DIVS to function as intended.  As an initial matter, access to DIVS is strictly limited to a finite number of authorized users, and points of access into the system are physically restricted to limited number of workspaces.  Second Hardy Decl. ¶ 43.  These space and personnel restriction pose major administrative obstacles; indeed, FBI employees who typically process FOIA requests would need to seek special permission and training to use the system, and their manipulation of the system would limit its availability of the system for use for its intended function.  *Id.*  Moreover, because DIVS is capable of accessing information controlled by OGAs, subjecting the system to FOIA searches would effectively create a new FOIA regime that would require the FBI to serve

26

SECRET//NOFORN

as a FOIA processor for the OGAs that control the information contained in those data sets. *Id.*

The FOIA does not contemplate such a regime, and the FBI does not have the resources to serve

in that role. Currently, the FBI has 5,009 pending FOIA requests for FY 2015. *Id.* Requiring a

search using DIVS in response to those requests would pose administrative burdens so large and

unreasonable that FBI would be unable to accomplish those searches, and such a requirement

would impair the FBI's ability to use DIVS to accomplish its national security and law

enforcement mission. *Id.*

(U)  Beyond the administrative and human resource burden that would be imposed upon

FBI, subjecting DIVS to FOIA would impede the FBI's ability to use DIVS for its intended

counterterrorism, counterintelligence, and law enforcement purpose because OGAs would be

less likely to share their information with the FBI. Second Hardy Decl. ¶ 42. Without access to

this information, DIVS's functionality as an investigative tool—the very purpose for which it

was created—would be virtually non-existent. *Id.* Both Congress and the 9/11 Review

Commission has emphasized that the removal of institutional barriers among the USIC is

paramount in preventing future attacks and protecting the national security. *See, e.g.,* USA

PATRIOT Act of 2001, Pub. L. No. 107-56, 115 Stat. 272 (2001); Second Hardy Decl. ¶¶ 12-13

(citing 9/11 Review Commission Report). Subjecting to FOIA information shared with FBI for

the limited purpose of developing investigatory leads would frustrate the purpose of DIVS and

would likely create a new barrier to the open sharing of information across agency lines.

27

SECRET//NOFORN

SECRET//NOFORN

## CONCLUSION

(U)  For the foregoing reasons, the FBI has met is obligations under the FOIA, and the

Court should grant its Renewed Motion for Summary Judgment.


Dated: July 6, 2015                                      Respectfully submitted,

                                                         BENJAMIN C. MIZER
                                                         Principal Deputy Assistant Attorney General

                                                         JOSEPH H. HUNT
                                                         Branch Director

                                                         ELIZABETH J. SHAPIRO
                                                         Deputy Branch Director


                                                         STEPHEN J. BUCKINGHAM
                                                         KRISTINA A. WOLFE
                                                         ADAM C. SIPLE
                                                         Trial Attorneys, U.S. Dep't of Justice
                                                         Civil Division, Federal Programs Branch
                                                         20 Massachusetts Avenue, N.W.
                                                         Washington, D.C. 20530
                                                         Tel: (202) 353-4519 / Fax: (202) 616-8470
                                                         Email: Kristina.Wolfe@usdoj.gov

                                                         *Counsel for Defendants*

SECRET//NOFORN